UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X

JOHN BULGARO, FREDERICK J.
CARTER, RONALD G. LUCAS,
DANIEL W. SCHMIDT, MICHAEL S.
SCALZO, SR., GARY R. STARING,
AND TOM J. VENTURA,

                Plaintiffs,

     - against -

IVY ASSET MANAGEMENT CORP.,

             Defendant.

------------------------------------------------ X

**MEMORANDUM OPINION
AND ORDER**

**10 Civ. 3601 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/6/10

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

         Plaintiffs Bulgaro, Carter, Lucas, Schmidt, Scalzo, Staring, and

Ventura, as fiduciaries of the New York Teamsters Conference Pension and

Retirement Fund ("Teamsters"), bring this action against Ivy Asset Management

Corp., ("Ivy"), claiming a breach of fiduciary duty under the Employee Retirement

Income Security Act of 1974 ("ERISA"). Plaintiffs allege that Ivy breached its

fiduciary duty to Teamsters by failing to divest Teamsters' assets in Amaranth

International Limited ("Amaranth"), which collapsed in September 2006. Ivy now

moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on

the ground that the facts alleged in the complaint are insufficient to state a claim

for breach of fiduciary duty.  For the reasons discussed below, Ivy's motion is denied.

## I.      BACKGROUND

### A.      The Maplewood Partnership

Plaintiffs bring this suit as fiduciaries of the New York Teamsters Conference Pension and Retirement Fund ("Teamsters Fund"), which is an "employee pension benefit plan" as defined by 29 U.S.C. § 1002(2).[1]  Plaintiffs allege that in September 2002 they "determined as part of the Fund's overall asset allocation" that they would "invest a portion of [the Teamsters'] assets in hedge-fund investments."[2]  Plaintiffs ultimately invested in Maplewood Associates, a fund managed solely by defendant Ivy.[3]

The Teamsters Fund "became a limited partner in the Maplewood Partnership," which "pool[ed] its limited partners' capital contributions in order to

---

[1]      *See* Complaint ("Compl.") ¶ 11.  An "employee pension benefit plan" is defined as "any plan, fund or program . . . that by its express terms . . . (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  29 U.S.C. § 1002(2)(A).

[2]      Compl. ¶ 18.

[3]      *See id.*

have its assets managed by a number of independent investment managers."[4]  As a

limited partner, the Teamsters Fund became a party to the Maplewood

Partnership's Amended and Restated Limited Partnership Agreement.[5]  A fiduciary

and investment manager of the Teamsters' assets invested in Maplewood, Ivy was

responsible for selecting and monitoring hedge funds for the Maplewood

investment portfolio, including an investment in Amaranth International Limited.[6]

Amaranth International Limited was "a Bermuda mutual fund company" which

ultimately collapsed in September 2006.[7]

### B.    The Alleged Breach of Fiduciary Duty

Plaintiffs allege that Ivy breached its fiduciary duty to Teamsters by

failing to divest Teamsters' assets in Amaranth "when Ivy knew or should have

known that Amaranth was no longer a prudent investment."[8]  Plaintiffs charge that

Amaranth held itself out as "a multi-strategy hedge fund that invested in several

different markets," but that by 2005, "it was heavily involved in a wholly

inappropriate, speculative and reckless manipulation of natural gas futures with

---

[4]    *Id.* ¶¶ 19-20.

[5]    *Id.*

[6]    *See id.* ¶¶ 19-20, 26.

[7]    *Id.* ¶¶ 26, 30.

[8]    *Id.* ¶ 1.

billions of dollars in borrowed money."[9] Plaintiffs further claim that "Ivy knew that Amaranth was not investing as Amaranth had promised," but that instead of divesting the Teamsters' investment, "Ivy asked Amaranth to start investing as Amaranth had promised and hoped Amaranth would."[10]

Plaintiffs do not allege that Ivy failed to monitor Amaranth; rather, plaintiffs maintain that when Ivy learned of Amaranth's "massive over-commitment to the energy market in late 2005," it put a "watch" on Amaranth.[11] According to plaintiffs, a "prudent fiduciary knowing what Ivy knew" would have instead "withdrawn the Teamsters Fund assets" before Amaranth's collapse.[12] Plaintiffs assert that in December 2003, the value of the Teamsters Fund assets invested in Amaranth was over $5 million, but that "by June 30, 2007, the value of those assets was zero."[13] This action seeks to recover losses as a result of the initial Amaranth investment.[14] Plaintiffs allege that "as a direct and proximate result of Ivy's breaches," the Teamsters Fund "has suffered losses to the overall value of its

---

[9]     *Id.* ¶ 28.

[10]    *Id.* ¶ 1.

[11]    *Id.* ¶ 32.

[12]    *Id.*

[13]    *Id.* ¶ 31.

[14]    *See id.* ¶ 37.

4

assets in an amount to be proven at trial."[15]

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all of the factual allegations contained in the complaint"[16] and "draw all reasonable inferences in plaintiff's favor."[17]  On the other hand, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]  To survive a motion to dismiss, therefore, the allegations in the complaint must meet a standard of "plausibility."[19]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20]  Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a

---

[15]    *Id.* ¶ 41.

[16]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

[17]    *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[18]    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[19]    *Twombly*, 550 U.S. at 564.

[20]    *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

5

defendant has acted unlawfully."[21]

When deciding a motion to dismiss under Rule 12(b)(6), the court is normally required to consider only the allegations on the face of the complaint. Even so, "[d]ocuments that are attached to the [complaint] or incorporated in it by reference are deemed part of the pleading and may be considered."[22]  The court is only allowed to consider documents outside the [complaint] if the documents are integral to the pleading or subject to judicial notice.[23]

### B.    Fiduciary Duty under ERISA

Section 404(a) of ERISA sets out the basic obligations of fiduciaries acting in connection with an ERISA benefits plan.  *First*, an ERISA fiduciary must act solely in the interest of the participants and beneficiaries of the plan.[24]  *Second*, an ERISA fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use" and to diversify plan investments "to minimize the risk of large losses, unless under the circumstances it is clearly

---

[21]    *Id.* (quotation marks omitted).

[22]    *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

[23]    *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

[24]    *See* 29 U.S.C. § 1104(a)(1).

6

prudent not to do so."[25] *Finally*, ERISA requires that fiduciaries act in accordance with plan documents and instruments insofar as those documents and instruments are consistent with the relevant provisions of the statute.[26]  If a fiduciary is found to have breached the obligations imposed by ERISA, it is liable to restore any losses to the plan that resulted from each breach, and may also be subject to any equitable or remedial relief that the court deems appropriate.[27]

In determining whether a fiduciary has violated the prudence requirement under ERISA, courts must evaluate whether that fiduciary, "at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters; and exercised independent judgment when making investment decisions."[28]  The Department of Labor has stated that an ERISA fiduciary has satisfied its investment duties if the fiduciary has first, "given appropriate consideration to those facts and circumstances that . . . the fiduciary knows or should know are relevant to the particular investment or investment course of

---

[25]     *Id.* §§ 1104(a)(1)(B)-(C).

[26]     *Id.* § 1104(a)(D).

[27]     *Id.* § 1109(a).

[28]     *Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 317 (5th Cir. 1999) (citing *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984)).

action involved" and second, "has acted accordingly."[29]  The Department of Labor

further clarifies that "appropriate consideration" may include "a determination by

the fiduciary that the particular investment . . . is reasonably designed, as part of

the portfolio . . . to further the purposes of the plan . . . ."[30]

## III.   DISCUSSION

Plaintiffs have sufficiently pleaded a breach of fiduciary duty under

section 404 of ERISA.  As an ERISA fiduciary, Ivy had the obligation to exercise

care and diligence and use its best judgment in evaluating each investment within

the plan portfolio.[31]  Plaintiffs have alleged facts plausibly showing that Ivy knew

"that Amaranth's success had become dependent upon highly leveraged,

unsustainable and enormous bets" and that instead of divesting, "Ivy asked

Amaranth to start investing as Amaranth had promised and hoped that Amaranth

would."[32]  The prudence standard under ERISA requires that a fiduciary use "the

appropriate methods to investigate the merits of the investment and to structure the

---

[29]   29 C.F.R. § 2250.404a-1(b)(1)(i)-(ii).

[30]   *Id.* § 2250.404a-1(b)(2).

[31]   *See* 29 U.S.C. §§ 1104(a)(1)(B)-(C).

[32]   Compl. ¶ 1.

8

investment."[33]  Plaintiffs claim that a prudent fiduciary "knowing what Ivy knew" would have "withdrawn the Teamsters Fund assets well before Amaranth collapsed in September 2006."[34]  Plaintiffs have made two factual allegations allowing a reasonable inference that Ivy did breach its fiduciary duty: first, that Ivy put a "watch" on Amaranth, and second, that Ivy asked Amaranth "to start investing as promised."[35]  At this stage, it is inappropriate to determine whether Ivy's failure to divest, given that knowledge, was prudent.  Treating all of plaintiffs' allegations as true, as I must, plaintiffs have sufficiently stated a claim of a breach of fiduciary duty under ERISA.

## IV.   CONCLUSION

For the reasons set forth above, Ivy's motion to dismiss the breach of fiduciary duty claim is denied.  The Clerk of the Court is directed to close this motion [Docket No. 39].  A conference is scheduled for October 21, 2010, at 5:30 p.m.

---

[33]   *Laborers,* 173 F.3d at 317.  *Accord Liss v. Smith*, 991 F. Supp. 278, 297 (S.D.N.Y. 1998) (emphasizing fiduciary obligation to properly investigate fund investments).

[34]   Compl. ¶ 32.

[35]   *Id.* ¶ 32.

9

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        October 6, 2010
              New York, New York

10

- **Appearances** -

**For Plaintiff:**

Thomas G. Moukawsher, Esq.
Moukawsher & Walsh, LLC
328 Mitchell Street
Groton, CT 06340
(860) 405-7240

Jules L. Smith, Esq.
Blitman & King LLP
The Powers Building, Suite 207
16 West Main Street
Rochester, New York 14614
(585) 232-5600

Ronald Dean, Esq.
Office of Ronald G. Dean
1155 Via de la Paz
Pacific Palisades, CA 90272
(310) 459-1636

**For Defendant:**

Mark Adam Kirsch, Esq.
Ladan Fazlollahi Stewart, Esq.
Gibson, Dunn & Crutcher, LLP (NY)
200 Park Avenue, 47th Floor
New York, NY 10166
(212) 351-5391

11